## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    PLAINTIFF, | CIVIL ACTION<br>NO. 2:25-CV-69 |
| v. | JURY DEMAND |
| ALLEGIANCE HEALTH MANAGEMENT, INC., AND CLHG-LEESVILLE, LLC D/B/A BYRD REGIONAL HOSPITAL,<br>    DEFENDANTS. | |

## **COMPLAINT**

### NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act, *as amended* ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Threccia Beason ("Ms. Beason") and other aggrieved individuals. As set forth more specifically below, Defendants, Allegiance Health Management, Inc. ("Allegiance Health") and CLHG-Leesville, LLC d/b/a Byrd Regional Hospital ("CLHG-Leesville") violated the ADA by making disability-related inquiries of job applicants and employees and by maintaining an inflexible leave policy resulting in the unlawful termination of individuals with a disability without consideration of reasonable accommodation.

### JURISDICTION & VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, § 1337, § 1343, and § 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended

("Title VII"), 42 U.S.C.§ § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed in several states including the State of Louisiana and within the jurisdiction and venue of the United States District Court for the Western District of Louisiana pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3).

**PARTIES**

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Allegiance Health operated at least fourteen healthcare facilities, including hospitals, primarily located in Louisiana but also located in Mississippi and Texas.

5. In or about June 2018, Allegiance Health purchased Byrd Regional Hospital, a healthcare facility in Leesville, Louisiana, and integrated the facility into Allegiance Health's healthcare system.

6. Allegiance Health has managed Byrd Regional Hospital since about June 2018.

7. Since about June 2018, all onsite hospital management employees at Byrd Regional Hospital have been employees of Allegiance Health.

8. Since about June 2018, Defendant CHLG-Leesville has been the owner of the state-issued hospital license for, and operator of, Byrd Regional Hospital.

9. At all relevant times, each Defendant is and has been a corporation continuously doing business in Louisiana.

10. At all relevant times, each Defendant has been an employer engaged in an industry affecting commerce with at least fifteen employees under 42 U.S.C. § 12111(2), (5) and (7).

11. At all relevant times, the two Defendants' managers operated out of the same corporate headquarters.

12. At all relevant times, Defendants shared personnel and management.

13. At all relevant times, the hospital management employees at Byrd Regional Hospital were employed by Allegiance Health Management, Inc.

14. At all relevant times, Defendants had interrelated operations.

15. At all relevant times, Defendants had centralized control of labor relations.

16. At all relevant times, employees of Allegiance Health Management, Inc. made controlling decisions about the hiring and firing, discharge and supervision of individuals working or performing services at Byrd Regional Hospital.

17. At all relevant times, employees of Allegiance Health Management, Inc. provided operative policies and materials to be used for labor relations at Byrd Regional Hospital, including hiring materials and applications.

18. At all relevant times, Defendants shared the same registered agent.

19. At all relevant times, Defendants maintained common ownership and financial control.

20. At all relevant times, the two Defendants operated as a single integrated enterprise such that all acts and failures alleged in this complaint were performed by and attributable to each of the two Defendants.

21. At all relevant times, Allegiance Health acted as a single integrated enterprise with its affiliated healthcare facilities or with entities licensed to operate such facilities, including but not limited to Byrd Regional Hospital, Minden Medical Center, Acadian Medical Center, Mercy Regional Hospital, De Quincy Medical Center, Sabine Medical Center, Allegiance Behavioral Health Center of Plainview (Texas), Allegiance Health Center of Ruston, Allegiance Healthcare of Louisiana, Allegiance Specialty Hospital of Greenville (Mississippi), Bienville Medical Center, Avolleyes Hospital, Oakdale Hospital, and Winn Medical Center.

22. At all relevant times, each Defendant acted as a joint employer, and all acts and failures alleged in this complaint occurred within the scope of the joint employer relationship. Thus, all acts and failures alleged in this Complaint were performed by and attributable to each of the two Defendants.

23. At all relevant times, each Defendant acted as an agent of the other, and all acts and failures alleged in this complaint occurred within the scope of such agency. Thus, all acts and failures alleged in this Complaint were performed by and attributable to each of the two Defendants.

## ADMINISTRATIVE PROCEDURES

24. More than 30 days before the institution of this action, Ms. Beason filed a charge of discrimination ("charge") with the Commission alleging violations of the ADA by Defendant CHLG-Leesville, LLC, doing business as Byrd Regional Hospital.

25. On or about July 19, 2023, the Commission issued to Defendants, Allegiance Health and CHLG-Leesville, a letter of determination ("determination") finding reasonable cause to believe that they had violated and continued to violate the ADA and inviting them to join with

the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

26. The Commission thereafter engaged in communications with Defendants to provide the opportunity to remedy the discriminatory practices described in the determination.

27. On or about November 17, 2023, the Commission issued to Defendants a notice of conciliation failure, advising that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

28. All conditions precedent to the institution of this action have been fulfilled.

## FACTUAL ALLEGATIONS

### *Pre-Offer Disability-Related Inquiries on Employment Application*

29. Since at least 2018 until at least March 2021 at some or all healthcare facilities managed and operated by Allegiance Health, Defendants subjected Ms. Beason and similarly-aggrieved individuals to disability-related inquiries before an offer of employment had been made.

30. Since at least 2018 until at least March 2021, Defendants provided an application form to some or all individuals seeking employment at Byrd Regional Hospital and/or its other affiliated healthcare facilities referred to in ¶ 21 that asked the applicant: (1) has any doctor ever restricted your activities; if yes, please list restrictions; were the restrictions permanent or temporary; are you currently restricted; what is the medical condition for which you are restricted; (2) are you presently treating with a doctor, chiropractor, psychiatrist, psychologist or other health-care provider; please list the medical condition being treated; doctor's name; specialty; doctor's address; (3) have you ever had a job accident; if you answered yes, please provide the date for each injury and the nature of the injury; how long were you on compensation; name of employer; and (4) has a doctor recommended a surgical procedure, which has not been completed prior to

5

the date, including but not limited to knee, hip, or shoulder replacement; please provide recommended surgery; approximate date of recommendation; doctor's name; specialty; doctor's address.

31. Since at least 2018 until at least March 2021, Defendants required that some or all individuals whom it considered for employment, including Ms. Beason, to complete this application form, referred to in ¶ 30 and attached hereto as Exhibit A, as a condition for being considered for employment.

32. In or about June 2018, Defendants required Ms. Beason to complete the application form referred to in ¶ 30 before Defendants made an offer of employment before an offer of employment had been made.

33. Since at least 2018, at least five hundred applicants for positions at Byrd Regional Hospital have been required to complete the application form referred to in ¶ 30 before an offer of employment had been made.

34. Since at least 2018 until at least March 2021, Defendant Allegiance Health required that some or all individuals seeking employment at its other affiliated healthcare facilities referred to in ¶ 21 complete the application form referred to in ¶ 30 before an offer of employment had been made.

35. Since at least 2018 until at least March 2021, at least one thousand applicants for positions at Allegiance Health's other affiliated healthcare facilities referred to in ¶ 21 have been required to complete the application form referred to in ¶ 30 before an offer of employment had been made.

*Post-Offer Disability-Related Inquiries Required Upon Hiring*

36.     Since at least 2018 to present at some or all healthcare facilities managed and operated by Allegiance Health, Defendants subjected Ms. Beason and other employees to disability-related inquiries after hiring.

37.     Since at least 2018 to present, Defendants have required some or all employees working at Byrd Regional Hospital to complete either or both a "Health History Questionnaire" containing disability-related inquiries and a "Louisiana Office of Worker's Compensation Administration ("LA OWCA") Second Injury Board Knowledge Questionnaire" containing disability-related inquiries.

38.     The Health History Questionnaire referred to in ¶ 37, among other inquiries, asks whether the employee has ever had any of seventy-two listed medical conditions, including asthma, heart disease, hernia, kidney disorder, arthritis, cancer, diabetes, depression or emotional problems, Parkinson's, autoimmune disease/disorder, multiple sclerosis, muscular dystrophy, lupus, history of mental health illness or treatment, HIV, nervous disorder, mental retardation, sickle cell disease, Hodgkin's, or disability from polio.  The Health History Questionnaire also seeks the date and nature of up to four prior hospitalizations and operations, and it asks for a list of all prescribed medications that are presently being taken.

39.     The LA OWCA Second Injury Board Knowledge Questionnaire referred to in ¶ 37, among other inquiries, asks whether the employee has ever had any of fifty-two medical conditions, including asthma, heart disease, hernia, kidney disorder, arthritis, cancer, diabetes, mental disorders, Parkinson's, multiple sclerosis, muscular dystrophy, seizure disorder, mental retardation, sickle cell disease, Hodgkin's, or disability from polio.  The LA OWCA Second Injury Board Questionnaire seeks further information about each condition the individual identifies,

including when it was diagnosed, if it still being treated, what medication is used, and whether there are any permanent restrictions associated with the condition.

40. There were about 459 employees at Byrd Regional Hospital as of June 2023.

41. Since at least 2018, Defendant Allegiance Health has required that some or all employees working at its other affiliated healthcare facilities referred to in ¶ 21 complete either or both the Health History Questionnaire or LA OWCA Second Injury Board Knowledge Questionnaire referred to in ¶ 37.

42. There were about 2,720 employees at Defendant Allegiance Health's other affiliated healthcare facilities as of June 2023.

43. The post-offer disability-related inquiries contained in the Health History Questionnaire referred to in ¶ 37 are not part of an employment entrance examination and are neither job-related nor consistent with business necessity.

44. The post-offer disability-related inquiries contained in the LA OWCA Second Injury Board Knowledge Questionnaire referred to in ¶ 37 are not part of an employment entrance examination and are neither job-related nor consistent with business necessity.

*Ongoing Disability-Related Inquiries in Annual Questionnaires*

45. Since at least 2018 to present, Defendants have required some or all employees working at Byrd Regional Hospital to complete on an annual basis an "Annual Employee Medical History Questionnaire" containing disability-related inquiries.

46. Since at least 2018 to present, Defendant Allegiance Health has required some or all employees working at its other affiliated facilities referred to in ¶ 21 to complete on an annual basis the "Annual Employee Medical History Questionnaire" referred to in ¶ 45.

47. The Annual Employee Medical History Questionnaire referred to in ¶ 45 is distinct from the Health History Questionnaire referred to in ¶ 37.

48. The Annual Employee Medical History Questionnaire referred to in ¶ 45, among other inquiries, asks whether the employee is currently under a doctor's care for medical treatment and if yes to list the reason, asks the employee to identify any current medications that would interfere with the ability to perform job duties, and to list recent illnesses, hospitalizations, and surgeries.

49. The disability-related inquiries contained in the Defendants' Annual Employee Medical History Questionnaire referred to in ¶ 45 are neither job-related nor consistent with business necessity.

*Inflexible Leave Policy*

50. Since at least 2017, Defendants have maintained an inflexible leave policy ("inflexible leave policy") which does not provide for reasonable accommodation of qualified individuals with disabilities, and which instead results in termination of their employment.

51. Since at least 2017, at Byrd Regional Hospital, Defendants have discharged qualified individuals with disabilities who could perform the essential functions of their job with or without accommodation by operation of the inflexible leave policy.

52. Since at least 2017, at some or all Defendant Allegiance Health's healthcare facilities referred to in ¶ 21, Defendant Allegiance Health has discharged qualified individuals with disabilities who could perform the essential functions of their job with or without accommodation by operation of the inflexible leave policy.

53. Since at least 2017, Defendant Allegiance Health discharged at least forty employees at its affiliated healthcare facilities referred to in ¶ 21 (inclusive of Byrd Regional Hospital) by operation of the inflexible leave policy.

54. Defendants discharged Ms. Beason from her Byrd Regional Hospital environmental technician position on or about May 28, 2019.

55. At the time of her discharge and all other relevant times, Ms. Beason had a physical impairment, a heart condition, that affected her circulatory and/cardiovascular systems and substantially limited her in major life activities, including the operation of her circulatory and/or cardiovascular functioning.

56. Ms. Beason had a record of disability with respect to her heart condition that Defendants were aware of at the time of her discharge and all relevant times.

57. At the time of her discharge and all other relevant times, Ms. Beason was a qualified individual with a disability who could perform the essential functions of her job with or without accommodation.

58. On or about May 24, 2019, Ms. Beason provided medical documentation to her supervisor supporting a need for medical leave of five days relating to her physical impairment.

59. Defendants were aware of Ms. Beason's physical impairment and that the medical leave request was related to the impairment.

60. Defendants rejected Ms. Beason's request and discharged her because she required medical leave but did not, according to Defendants, qualify for leave under the Family Medical Leave Act ("FMLA").

61. Defendants did not make a reasonable accommodation to the known physical limitation of Ms. Beason, did not consider whether a reasonable accommodation should be granted

in response to the request, and did not engage in any interactive process to determine whether the requested accommodation or any other should be granted.

62. Rather than reasonably accommodating Ms. Beason's disability, Defendants terminated her employment.

63. Since at least 2017, Defendants as a matter of policy and practice did not consider whether a reasonable accommodation to a known limitation was appropriate for an otherwise qualified Byrd Regional Hospital employee with a disability who requested medical leave but did not qualify for any or further FMLA leave.

64. Since at least 2017, Defendants as a matter of policy and practice did not engage in an interactive process to determine whether or what reasonable accommodation was appropriate for an otherwise qualified Byrd Regional Hospital employee with a disability who requested medical leave but did not qualify for any or further FMLA leave.

65. Since at least 2017, Defendants as a matter of policy and practice did not make reasonable accommodations to known limitations for otherwise qualified Byrd Regional Hospital employees with a disability who did not qualify for any or additional FMLA leave.

66. Since at least 2017, for employees at Defendant Allegiance Health's affiliated healthcare facilities referred to in ¶ 21, Defendant Allegiance Health as a matter of policy and practice did not consider whether a reasonable accommodation to a known limitation was appropriate for an otherwise qualified employee with a disability who requested medical leave but did not qualify for any or further FMLA leave.

67. Since at least 2017, for employees at Defendant Allegiance Health's affiliated healthcare facilities referred to in ¶ 21, Defendant Allegiance Health as a matter of policy and practice did not engage in an interactive process to determine whether or what reasonable

accommodation was appropriate for an otherwise qualified employee with a disability who requested medical leave but did not qualify for any or further FMLA leave.

68. Since at least 2017, for employees at Defendant Allegiance Health's affiliated healthcare facilities referred to in ¶ 21, Defendant Allegiance Health as a matter of policy and practice, did not make reasonable accommodations to known limitations for otherwise qualified employees with a disability who did not qualify for any or additional FMLA leave.

*Intent*

69. The unlawful employment practices complained of above were and are intentional.

70. The unlawful employment practices complained of above were and are done willfully and with malice or reckless indifference to the federally protected rights of applicants and employees.

**STATEMENT OF CLAIMS**

71. Since at least 2018, through the conduct alleged herein, Defendants have engaged in unlawful employment practices by subjecting Ms. Beason and other individuals seeking employment at Allegiance Health's healthcare facilities to disability-related inquiries before an offer of employment is made, in violation of the ADA, 42 U.S.C. § 12112(d).

72. Since at least 2018, through the conduct alleged herein, Defendants have engaged in unlawful employment practices by subjecting Ms. Beason and other employees at Allegiance Health's healthcare facilities to disability-related inquiries that are not job-related or consistent with business necessity, in violation of the ADA, 42 U.S.C. § 12112(d).

73. Since at least 2017, through the conduct alleged herein, Defendants have engaged in unlawful employment practices based on disability by not making reasonable accommodations to the known physical or mental limitations of Ms. Beason and other otherwise qualified

individuals with a disability employed at Allegiance Health's healthcare facilities by operation and application of an inflexible leave policy that does not provide for reasonable accommodation of qualified individuals with disabilities, in violation of 42 U.S.C. §§ 12112(a) and 12112(b).

74. The effect of Defendants' unlawful employment practices complained of herein has been to subject Ms. Beason and other individuals to unlawful disability-related inquiries and to deprive them of equal employment opportunities and otherwise adversely affect their status as an employee and/or job applicant, in violation of the ADA.

75. As a result of Defendants' unlawful actions, Ms. Beason and individuals subject to the unlawful employment practices complained of above have suffered pecuniary, non-pecuniary, and other losses and damages.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against applicants and employees on the basis of disability, and to enjoin Defendants from engaging in unlawful medical inquiries.

B. Order Defendants to institute and carry out policies, practices, and programs that eliminate unlawful disability-related inquiries and provide equal employment opportunities for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make Ms. Beason whole by providing appropriate back pay with prejudgment interest in an amount to be determined at trial, and other affirmative

relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay.

    D.    Order Defendants to make Ms. Beason whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, and humiliation, in amounts to be determined at trial.

    E.    Order Defendants to make whole other individuals aggrieved by the unlawful medical inquiries employment practices by providing compensation for past and future pecuniary and nonpecuniary losses.

    F.    Order Defendants to post and keep posted the notices required by the ADA, 42 U.S.C. § 12115 (incorporating 42 U.S.C. § 2000e-10(a)).

    G.    Order Defendants to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance the ADA, 42 U.S.C. § 12117(a) (incorporating Title VII, 42 U.S.C. § 2000e-8(c)).

    H.    Order Defendants to pay punitive damages for its malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

    I.    Grant such further relief as the Court deems necessary and proper in the public interest.

    J.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

U.S. Equal Employment Opportunity Commission

**Karla Gilbride**
General Counsel

**Christopher Lage**
Deputy General Counsel

**Gwendolyn Young Reams**
Associate General Counsel

**Rudy L. Sustaita**
Regional Attorney

**Gregory T. Juge**
Assistant Regional Attorney


/s/ Peter Theis
**Peter Theis, T.A.**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2548
Louisiana Bar No. 34786

**Elizabeth J. Owen**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2535
Email: elizabeth.owen@eeoc.gov
Louisiana Bar No. 33620

        **Scott D. Wilson**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2569
Email: scott.wilson@eeoc.gov
Louisiana Bar No. 19835

**Jacqueline C. Barber**
Trial Attorney
U.S. Equal Employment Opportunity Commission
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, Louisiana 70130
Phone: (504) 635-2572
Email:  jacqueline.barber@eeoc.gov
Louisiana Bar No. 36362

COUNSEL FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**REGISTERED AGENT FOR SERVICE OF PROCESS:**

JIMMY HALL
3800 VIKING DRIVE,
BOSSIER CITY, LA  71111